## TAPP et al. v. STUART.
### No. 897.

District Court, N. D. Oklahoma.

Dec. 8, 1934.

Goldsberry & Klein and George W. Reed, Jr., all of Tulsa, Okl., for complainants.

M. L. Holcombe, Clarence Lohman, Ralph A. Barney, and Robert Stuart, all of Pawhuska, Okl., for respondent.

**FRANKLIN E. KENNAMER,** District Judge.

Many of the facts material to the decision of this case on the merits are stated in Tapp v. Stuart (D. C.) 6 F. Supp. 577.

For more than twenty years prior to the commencement of this action, the Secretary of the Interior construed the pertinent acts of Congress as requiring that the administrator or executor of a deceased Osage Indian should be paid all trust funds subsequently accruing to the credit of the headrights owned by such Indian at the time of his death. May 25, 1915, the Solicitor of the Interior Department made a formal ruling that trust funds should be so paid (D-29630), and on March 11, 1916, this opinion was concurred in by the Comptroller of the Treasury (22 Comp. Dec. 457). Again in 1922 the Solicitor of the Interior Department made a similar ruling. On May 6, 1929, the Assistant Secretary of the Interior advised the superintendent of the Osage agency to follow that course in the instant case. The moneys in question were paid to respondent as administrator with the will annexed, and by him disbursed in due course of the administration of the estate of the deceased. In some instances, allowances were made for the support, as family allowance, for the minor son of the deceased, who was an heir of the deceased, and is a complainant herein. Checks were transmitted by the Osage agency to the respondent for the particular purpose, and were by him paid over to the guardian of the minor. These funds were from income from the headright.

■ This practice of long standing is not decisive of the law. It shows that the officers of the Department of the Interior paid the money to the administrator, and that the administrator received it and paid it out in good faith. The funds accruing to the headright, which were paid over to the administrator, were used by him for the payment of debts of the deceased, and for other purposes, under orders of the county court of Osage county, Okl., where the probate proceedings were pending. Complainants made no claim to the funds, but acquiesced in the disbursing of them by the administrator, prior to the instituting of this action. They were present in the county court and participated in the proceedings, although they were without knowledge of their legal rights with respect to such funds, but were advised only as to the departmental practice set out.

■ From the decisions in De Noya v. Arrington, 163 Okl. 44, 20 P.(2d) 563, In re Denison (Dist. Ct. Western Dist. Okl.) 38 F.(2d) 662, and Taylor v. Tayrien (C. C. A. 10) 51 F.(2d) 884, it is established that the departmental construction of the acts of Congress was in error, that the trust funds accruing after the death of the deceased should not have been paid to her administrator, but should have been paid directly to the heirs, and that such funds were not subject to administration by the county court of Osage county. In other words, such funds were payable directly to the heirs of the deceased, and were not subject to administration by the probate court; that court being without jurisdiction over such funds. The courts of Oklahoma were without jurisdiction of the members of the Osage Tribe until Congress conferred jurisdiction upon them. Limited jurisdiction was conferred, but the acts of Congress did not confer jurisdiction over the funds involved in this action. The various congressional acts with respect to the jurisdiction of probate courts of Oklahoma over Osage Indians are referred to in United States v. Hughes (Dist. Ct., Northern Dist. Okl.) 6 F. Supp. 972.

■ If an administrator in good faith pays out funds under order of a county court having jurisdiction of the administration of the estate of a deceased, the order of the court protects him from personal liability if the court had jurisdiction to make the order. In re Coyne's Estate, 103 Okl. 279, 229 P. 630; O'Neill v. Cunningham, 119 Okl. 157, 244 P. 444. Complainants urge that these funds were not within the jurisdiction of the county court of Osage county, and that court was without any power or authority to adjudicate the ownership thereof so as to bind these claimants, or to disburse such funds for any purpose, so that respondent can claim no protection by virtue of the orders of the county court of Osage county. In administering the estate of the deceased, the probate court may inquire into the title to property apparently belonging to the estate in order to facilitate the orderly progress of business in that court, but, if and when it appears that the title to the property is claimed by another, that court has no jurisdiction to determine the question of title so as to bind the claimants, even though the claimants are the heirs or devisees of the deceased. In re Kelly's Estate, 132 Okl. 21, 269 P. 282; Hartwig v. Flynn, 79 Kan. 595, 100 P. 642; In re Belt's Estate, 29 Wash. 535, 70 P. 74, 92 Am. St. Rep. 916; Shaw v. Palmer,

65 Cal. App. 441, 224 P. 106; Simonton v. Simonton, 33 Idaho, 255, 193 P. 386; Maury v. Jones (C. C. A. 9) 25 F.(2d) 412. In the instant case, the probate court was without jurisdiction over the funds involved; its order with respect to the ownership of such funds was a nullity; it is not binding on the complainants, although they were present in the probate proceedings and participated therein.

The headright funds, as they are termed, being income of an Osage allottee from the mineral resources of the tribe, are restricted by congressional acts. United States v. Hughes, supra. The restrictions pertain to the direct payment to heirs of deceased allottees, as well as to restrictions to certain members not having competency certificates, not involved herein. The Oklahoma Supreme Court, in Cowokochee v. Chapman, 90 Okl. 121, 215 P. 759, has held that restricted Indian lands are not subject to the payment of the debts of the deceased allottee, are not assets of such deceased allottee's estate subject to administration; that a probate court in distributing the estate of a deceased person has no jurisdiction to distribute any estate other than the assets of the estate subject to administration, and a decree distributing an estate over which the court has no jurisdiction is a nullity.

In the instant case, such funds are not subject to the payment of debts, and are therefore not assets of the deceased's estate subject to administration. The instant case presents a stronger reason for the rule announced in the cited case, in that the act of Congress specifically provides that such funds shall be paid directly to the heirs, as well as shall not be subject to the payment of debts. It clearly follows that, if the county court of Osage county was without jurisdiction over the funds in question, all orders made with respect to such funds are nullities, and the respondent can have no protection from them. It also follows that, since there was want of jurisdiction over such funds and the orders of the court pertaining thereto were void, such court orders are subject to collateral attack. See Pettis v. Johnston, 78 Okl. 277, 190 P. 681.

Respondent insists that complainants are estopped from attacking the proceedings in the probate court relative to such funds, because of their presence in the county court of Osage county, and their participation in the proceedings, and acquiescence thereto; that complainants took no appeals from the orders of the county court, and made no protests against the disbursements until this action was instituted. Estoppel cannot validate that which is absolutely invalid under the law. Joy v. Godchaux (C. C. A.) 35 F. (2d) 649, certiorari denied Goudchaux v. Joy, 281 U. S. 723, 50 S. Ct. 239, 74 L. Ed. 1141. The great weight of the authorities is that acts of a party based upon an innocent mistake as to his legal rights will not estop him to assert same. Huffman v. Nixon, 152 Mo. 303, 53 S. W. 1078, 75 Am. St. Rep. 454; Blount v. Eames, 150 Mich. 35, 113 N. W. 589. Estoppel cannot arise where both parties labor under mistake as to facts. Rockwood v. U. S. (Ct. Cl.) 39 F.(2d) 984. There can be no estoppel in the instant case because complainants were without knowledge as to their legal rights.

Respondent cites the case of Doran v. Kennedy, 237 U. S. 362, 35 S. Ct. 615, 59 L. Ed. 996, in support of his defense that the jurisdiction of the probate court cannot be attacked collaterally even when a law of the United States is directly involved. The cited case involved a federal law to the effect that homestead lands were not subject to sale for the satisfaction of debts contracted prior to the issuing of a patent therefor. The cited case would be controlling if the probate court did not have jurisdiction over the lands in question, but the court said that the probate court had jurisdiction over the lands. If the probate court had such jurisdiction, it has jurisdiction to make an erroneous order, and the party aggrieved has his right of appeal. The order is not void, and a direct attack only can be made. But, where there is want of jurisdiction of the court over the property involved, all orders with respect to such property are nullities, and are subject to collateral attack.

Butte, etc., Railway Co. v. United States, 290 U. S. 127, 54 S. Ct. 108, 110, 78 L. Ed. 222, is cited in defense of the action. The cited case was instituted to recover a sum of money paid to the railroad company pursuant to a direction of the Interstate Commerce Commission, under its interpretation of the word "deficit" in the Transportation Act of 1920 (41 Stat. 456). Subsequent to making the payment the Commission changed its construction of the word "deficit," and under the new construction it was discovered that the railroad company was not entitled to the sums paid it by the government. It is necessary to quote very briefly from the opinion of the Supreme Court to illustrate that the cited case is not controlling and

does not sustain the defense: "In making those decisions the Commission would necessarily act in a quasi judicial capacity. If it misconstrued the term 'deficit,' it committed an error; but it did not transcend its jurisdiction. * * * " It clearly appears that there was jurisdiction in the Commission to make the order, even if a mistaken order were made. There is want of jurisdiction in the county court over the funds involved herein, and its orders are void. The cited cases do not support the contentions of the respondent.

■ The congressional act involved (Act April 18, 1912, 37 Stat. 86) provides that funeral expenses and expenses of last illness may be paid from such funds, but that such funds shall not be subject to payment of other debts of the deceased, and shall be paid to the heirs of the deceased. Respondent has used funds coming into his possession for payment of debts of the deceased, for payment of family allowances, for expenses of administration, and for other purposes not necessary to mention. Funds other than restricted funds came into the possession of the administrator, and such other funds were unrestricted, and subject to the jurisdiction of the county court of Osage county. The act above referred to does not provide that all of the deceased's other funds shall first be used for payment of expenses of last illness and funeral, before the restricted funds may be so employed. Because of the construction placed upon the act by the Secretary of the Interior and the equities involved, the administrator should be permitted to pay expenses of last illness and funeral from the restricted funds here involved, and he will be credited therewith in the accounting. However, the extravagant funeral expenses for deceased Osage Indians does not appeal favorably to a court of equity; such large expenses are indeed shocking, but are for the determination of the county court of Osage county. The administrator will also be credited with all funds paid by him, either directly or indirectly through a guardian, to the heirs. If in fact the funds reached the heirs, although through the hands of the administrator, they will be charged with such moneys, and will not be permitted to receive them and to attempt to recover them because of erroneous payment through administration proceedings. The administrator will be permitted, in the accounting, to the use of unrestricted funds in his possession for payment of administration expenses and other debts, for such funds are not subject to review in this action.

A decree may be entered for complainants, for an accounting from the respondent for the restricted funds paid to him as such administrator, as herein announced.